```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

GENE A.,                          :
   Plaintiff,                     :
                                  :
v.                                : Civil No. 3:21CV767(AWT)
                                  :
KILOLO KIJAKAZI, ACTING           :
COMMISSIONER OF SOCIAL SECURITY,  :
   Defendant.                     :
```

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Gene A. appeals the Commissioner's final decision denying her application for Supplemental Security Income ("SSI") pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).  The plaintiff filed a motion for reversal or remand, contending that the Administrative Law Judge ("ALJ") erred because he "1) had no opinion evidence to rely on, substituting his judgment for that of all doctors; and 2) failed to compose an RFC description encompassing [the plaintiff]'s actual impairments."  Pl.'s Mem. (ECF No. 17-1) at 2.  The Commissioner filed a motion for an order affirming the Commissioner's decision, maintaining that "the Acting Commissioner's findings are supported by substantial evidence and made by a correct application of legal principles."  Def.'s Mot. (ECF No. 19) at 1.

For the reasons set forth below, the court concludes that the ALJ applied the correct legal principles and that his

findings are supported by substantial evidence.  Thus, the Commissioner's final decision is being affirmed.

## I. Legal Standard

"A district court reviewing a final [] decision . . . [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C § 405(g), is performing an appellate function."  Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981).  The court may not make a de novo determination of whether a plaintiff is disabled in reviewing a denial of disability benefits.  See Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching a conclusion and whether the decision is supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).  Substantial evidence "is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted).

Absent legal error, the court may not set aside the decision of the Commissioner if it is supported by substantial evidence.  See Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); 42 U.S.C. § 405(g)("The findings of the Commissioner of

Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Thus, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. See Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

## II. Discussion

### A. Medical Opinions

The plaintiff contends that the ALJ erred "in weighing medical opinions" of primary care providers Laurie Edwards, Psy.D., and Franklin Dedominicis, P.A.-C and of the state agency Disability Determination Services medical and psychological consultants; and that the ALJ "discount[ed] all of the treating source opinions" and "had no opinion evidence to rely on, substituting his judgment for that of all doctors". Pl.'s Mem. at 1, 2, 7.

Section 416.920c of the regulations address "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017". The regulation[1] states in pertinent part:

---

[1] The court does not address arguments or caselaw based on regulations in place prior to March 27, 2017 because they do not apply. The plaintiff filed his application after March 27, 2017.

(a) How we consider medical opinions and prior administrative medical findings. We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

(b) How we articulate our consideration of medical opinions and prior administrative medical findings. We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record. Our articulation requirements are as follows:

> (1) Source-level articulation. . . . [W]hen a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.
>
> (2) Most important factors. The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. . . .  We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate . . . .

4

>	(3) Equally persuasive medical opinions or prior administrative medical findings about the same issue. . . .
>
> (c) Factors. We will consider the following factors when we consider the medical opinion(s) and prior administrative medical finding(s) in your case:
>
>	(1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
>	(2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.
>
>	(3) Relationship with the claimant. . . .
>
>	(4) Specialization. . . .
>
>	(5) Other factors. . . .
>
> (d) Evidence from nonmedical sources. . . .

20 C.F.R. § 416.920c (effective March 27, 2017).

>	In this case, the ALJ wrote in the Decision:
>
>	The opinions of Dr. Edwards dated September 2018 and December 2018 are partially persuasive (Exhibits 11F; 14F). The undersigned generally agrees with her findings regarding social interaction limitations and task performance limitations, due to his irritability and sometimes poor concentration (Exhibits 8F; 13F). However, Dr. Edwards overestimates the claimant's limitations in carrying out single-step instructions and focusing long enough to complete simple tasks, based on the claimant's reported skill with computers and completion of disability

5

> paperwork for his girlfriend (Exhibit 13F/11, 13). Also, Dr. Edward's opinion that he sometimes has problems taking care of personal hygiene and caring for physical needs has no support in the record. On the contrary, he is noted to be a caretaker for other people (Exhibits 8F/13-14; 13F/13, 14).
>
> The opinions of the state agency Disability Determination Services (DDS) medical and psychological consultants at the initial and reconsideration levels are generally persuasive, based on the evidence in the file at those times (Exhibits 1A; 3A). Since those opinions were issued, additional evidence was received that justifies additional physical limitations in the residual functional capacity (Exhibits 16F-20F).
>
> The opinion of the claimant's primary care provider, Franklin Dedominicis, dated January 2019 is partially persuasive (Exhibit 20F/391-397). The undersigned generally agrees with the findings regarding physical limitations, except for the sitting and standing limitations and manipulative limitations, which have no support in the record. The undersigned finds the mental limitations unpersuasive, however, as Mr. Dedominicis is not a mental health specialist.

R. 24-25.

Here, the ALJ articulated how persuasive he found Dr. Edwards' ("partially"), P.A. Dedominicis' ("partially") and the state agency consultants' ("generally") opinions. The ALJ cited supporting evidence for his conclusions (Exhibits 8F, 11F, 13F, 14F; 20F; 1A, 3A, 16F-20F, respectively). The ALJ explained why he found relevant opinions supported ("due to his irritability and sometimes poor concentration") or unsupported ("no

6

support in the record", "not a mental health specialist") by objective evidence.  The ALJ also explained why he found relevant opinions consistent ("based on the evidence in the file at those times" and "additional evidence . . . that justifies additional physical limitations") or inconsistent ("based on the claimant's reported skill with computers and completion of disability paperwork for his girlfriend", "noted to be a caretaker for other people") with other evidence.

As the defendant notes (see Def.'s Mem. at 5-6, 8), at times the plaintiff exhibited linear and goal-directed thought process, clear and organized thought content, normal memory, fair or good insight and judgment, baseline levels of anxiety or appropriate affect.  See R. 538-40, 542, 548, 551, 553-55, 697, 702, 720.  Dr. Edwards noted in her December 2018 statement that the plaintiff's cognitive status—including orientation, memory, attention, and concentration—was "fully oriented".  R. 734.  The plaintiff indicated that he was considering part-time work (R. 700), suggested he was "looking into botany courses at GCC" (R. 705), and reported activities such as helping his wife complete job applications (R. 697).  Physical examinations showed that the plaintiff has displayed normal gait, normal strength, and normal motor function (See R. 546, 602, 813,

7

840, 857, 883) and that with respect to manipulative limitations, the plaintiff indicated on his Function Report that he had no problems using his hands (R. 346).

The court finds that there is no error in the ALJ's application of § 416.920c and that the ALJ's assessment of these medical opinions is supported by substantial evidence.  Therefore, the plaintiff's motion to reverse or remand on these grounds is being denied.

    **B.   Residual Functional Capacity**

An individual's residual functional capacity ("RFC") is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.  The plaintiff contends that "[w]ithout the benefit of medical opinions, as described above" the RFC was "not supported by any medical opinions".  Pl.'s Mem. at 1, 13.  As discussed above, the ALJ did have the benefit of medical opinions, and his assessment of those medical opinions is supported by substantial evidence.

The plaintiff also contends that the ALJ "failed to compose an RFC description encompassing Mr. Amato's actual impairments" by omitting off-task behaviors noted in three medical opinions, one by Franklin Dedominicis, P.A.-C, one by Laurie Edwards, Psy.D., and one by Katrin Carlson, Psy.D.. See Pl.'s Mem. at 14.  Finally, the plaintiff contends that "[t]he ALJ's [RFC]

8

limitation to no exposure to 'concentrated' poor ventilation is not a sufficient limitation." Pl.'s Mem. at 14.

The ALJ "is responsible for assessing [] residual functional capacity" (20 C.F.R. § 416.946(c); SSR 96-8p) "based on all of the relevant medical and other evidence" (20 C.F.R. § 416.945(a)(3)).

The RFC reads:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform **light work** as defined in 20 CFR 416.967(b) except **with the following limitations:**
> 1) no more than occasional bending, balancing, twisting, squatting, kneeling, crawling, and climbing, but no climbing of ropes and ladders;
> 2) must avoid hazards such as heights, vibrations, and dangerous machinery including driving;
> 3) **an environment free from concentrated poor ventilation, dust, fumes, gases, odors, humidity, and temperature extremes;**
> 4) no left or right foot controls;
> 5) occasional bilateral overhead reaching;
> 6) capable of simple, routine, repetitious work that does not require teamwork or working closely with the public, with no public interaction and no more than occasional interaction with coworkers and supervisors.

R. 20 (emphasis added).

### 1. Medical Opinions of Off-Task Behaviors

#### a. Franklin Dedominicis, P.A.-C

The plaintiff contends that the ALJ failed to compose an RFC description encompassing Franklin DeDominicis' opinion that "during an 8-hour day Mr. Amato can sit 2 hours, stand 2 hours, and walk 1 hour". Pl.'s Mem. at 14. The plaintiff states that

9

this would result "in off-task behavior the rest of the time" and that as the "VE explained [] '10% of the time off task, or 90% on task is---is acceptable only.'"  Pl.'s Mem. at 14.

As noted in section II.A above, the ALJ weighed Franklin Dedominicis' opinion dated January 2019 and found it "partially persuasive (Exhibit 20F/391-397)".  R. 25.  The ALJ "generally agrees with the findings regarding physical limitations, **except for the sitting and standing limitations** and manipulative limitations, which have no support in the record."  R. 25 (emphasis added).  Also, on October 18, 2018, Aaron Snyder, M.D., a medical consultant, provided an inconsistent opinion: the plaintiff could "[s]tand and/or walk (with normal breaks) for a total of: About 6 hours in an 8-hour workday" *and* could "[s]it (with normal breaks for a total of: More than 6 hours on a sustained basis in an 8-hour workday".  R. 75.

The plaintiff relies on a sentence in DeDominicis' medical opinion and ignores the medical evidence to the contrary.  That does not support a finding either that the ALJ erred in applying the law or that the ALJ's RFC assessment was not supported by substantial evidence.

### b. Laurie Edwards, Psy.D.

The plaintiff contends that the ALJ failed to compose an RFC description encompassing Dr. Edwards' opinion that the

10

plaintiff "has a 'frequent problem' performing basic activities at a reasonable pace because he is easily over-whelmed and overstimulated (Tr. 678 (Exhibit 11F))". Pl.'s Mem. at 14.

The ALJ weighed Dr. Edwards' opinions and "generally agrees with her findings regarding . . . task performance limitations, due to his irritability and sometimes poor concentration" but found that she "**overestimates the claimant's limitations in carrying out single-step instructions and focusing long enough to complete simple tasks**, based on the claimant's reported skill with computers and completion of disability paperwork for his girlfriend". R. 24-25 (emphasis added).

Additionally, the ALJ noted:

> The claimant testified to daily activities which are inconsistent with his allegations. He testified regarding regular camping trips to Lake George with friends. He further testified to using the internet, shopping online, and using a cell phone, including texting, having a girlfriend, and going to restaurants with her (Claimant's Testimony). The record also has numerous references to Lake George vacations in 2017 and 2018 (Exhibit 8F/13-14, 16, 32). Other activities include going to horse races (Exhibit 8F/9-10), indoor gardening, and taking care of his cats (Exhibit 13F/5-6). He revealed that he had computer skills in a treatment note in December 2018, when he purchased a new computer and "worked hard setting it up" (Exhibit 13F/11). He has been noted to use a computer to complete all of his girlfriend's disability and worker's compensation paperwork (Exhibit 13F/11, 13). His role as a caretaker for his girlfriend and other family members is mentioned numerous times in the record. For example, family members came to appreciate

11

> what he did for his girlfriend when they took on
> the role while he was away in Lake George (Exhibit
> 8F/13-14). He was also described as "actively
> involved" in her care (Exhibit 13F/13). In January
> 2019, he stated that he was exhausted by having to
> "babysit" other adults (Exhibit 13F/14). In
> November 2018, he was even considering part-time
> work at a cannabis growing facility or dispensary
> (Exhibit 13F/9).

R. 24.

Thus, the record does not support a finding either that the ALJ erred in applying the law or that the ALJ's RFC assessment was not supported by substantial evidence.

### c. Katrin Carlson, Psy.D.

The plaintiff contends that the ALJ failed to compose an RFC description encompassing State Agency reviewer Dr. Katrin Carlson's opinion that the plaintiff "is moderately limited in the ability to [get] along with coworkers or peers without distracting them or exhibiting behavioral extremes (Tr. 78)". Pl.'s Mem. at 14.

However, the RFC limitation of "simple, routine, repetitious work that does not require teamwork . . . and no more than occasional interaction with coworkers . . . ." (R. 20), encompasses Dr. Carlson's opinion that the plaintiff is moderately limited in getting along with coworkers without distracting them or exhibiting behavioral extremes.

### 2. Explanation of Respiratory Limitations

The plaintiff contends that the ALJ failed to "explain on

what he based his RFC finding that [the plaintiff] should avoid concentrated exposure to pulmonary irritants, as opposed to moderate exposure, as opined by two State Agency" reviewers, Dr. Aaron Snyder, M.D. and Dr. Judith Vogelsang, D.O.. Pl.'s Mem. at 14.

The ALJ's assessment that the environment need only be free from concentrated (as opposed to moderate) poor ventilation, dust, fumes, gases, odors, humidity, and temperature extremes is supported by substantial evidence. The ALJ found that the opinions of the state agency reviewers were "generally persuasive, based on the evidence in the file at those times". R. 25. The fact that the ALJ found those findings generally persuasive does not mean that he was required to accept them in their entirety, and in fact the ALJ concluded: "Since those opinions were issued, additional evidence was received that justifies additional physical limitations in the residual functional capacity." R. 25. The ALJ considered that in November 2017 the plaintiff was prescribed a ProAir rescue inhaler to use in addition to his existing Symbicort prescription, and that in March 2018 "he reported improvement in his symptoms when climbing stairs and noted that the Symbicort helped." R. 23. In support of his assessment, the ALJ cited to the results of a physical exam on March 8, 2018, which showed that chest shape and expansion, breath sounds,

13

percussion and axillary nodes were normal and there were no rales or wheezes (See R. 608.) and that COPD "symptoms are controlled by [S]ymbicort" (R. 609). The record reflects that results of physical exams on other dates also support the ALJ's assessment. See, e.g., 8/22/18, chest shape and expansion, breath sounds, percussion and axillary nodes were normal with no rales or wheezes (R. 602); 12/20/18, same (R. 883); 3/20/19, same (R. 857); 9/17/19, same (R. 839); and on 5/12/20, "No obvious SOB [shortness of breath] noted during conversation" (R. 813). In March 2019 the pulmonary specialist continued the plaintiff on Symbicort and started him on Atrovent after he complained of shortness of breath, coughing and wheezing. The ALJ also found that despite the plaintiff's COPD, he continued to smoke and was in fact, as of March 18, a "'heavy' cigarette smoker, smoking 20 to 39 cigarette per day" even though he was repeatedly counseled to quit smoking. R. 23. Thus, the record with respect to the plaintiff's respiratory system included some information supporting the plaintiff's claims and some information undermining it, and the ALJ credited the plaintiff's allegations of respiratory issues to some degree.

Finally, the plaintiff contends that the ALJ should have "take[n] into account" obesity, "which will have an added effect on [] breathing difficulties". Pl.'s Mem. at 14.

When explaining the basis of the RFC, the ALJ wrote:

14

> The claimant's weight was documented in the medical records at 250 pounds with a Body Mass Index (BMI) of 36.92 in March 2019 (Exhibit 17F/5). Based on these figures, the claimant's weight has been in the obese range during the relevant period.[] **The claimant's weight, including the impact on his ability to ambulate as well as his other body systems, has been considered within the functional limitations determined herein.**

R. 24 (emphasis added).

The ALJ considered the plaintiff's breathing difficulties:

> He also experiences shortness of breath randomly, which happens daily.  He takes several inhalers for this condition and sees a pulmonologist.

R. 21.

> The claimant had a diagnosis of COPD since prior to the alleged onset date (Exhibit 7F/3). In November 2017, he endorsed shortness of breath when climbing stairs more than two times. In addition to his existing Symbicort prescription, the ProAir rescue inhaler was prescribed (Exhibit 9F/15-16). By March 2018, he reported improvement in his symptoms when climbing stairs and noted that the Symbicort helped. His physical examination was within normal limits (Exhibit 9F/7-12). In March 2019, he presented to pulmonary specialist Madhu Gawda, M.D. with complaints of shortness of breath, coughing, and wheezing. He was continued on Symbicort and started on atrovent (Exhibit 17F/2-9). A chest X-ray performed in January 2017 was normal (Exhibit 20F/46).
>
> Despite the claimant's COPD, he continued to smoke. In fact, as of March 2018, he was described as a "heavy" cigarette smoker, smoking 20 to 39 cigarettes per day (Exhibit 9F/8). He was repeatedly counseled to quit smoking (Exhibits 9F/5; 17F/8).

R. 23.

> In light of the foregoing, the record does not support a

15

finding either that the ALJ erred in applying the law or that the ALJ's RFC assessment was not supported by substantial evidence.

### III. Conclusion

For the reasons set forth above, Plaintiff's Motion for Order Reversing the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing (ECF No. 17) is hereby DENIED, and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 19) is hereby GRANTED.

The Clerk's Office is instructed that, if any party subsequently appeals to this court the decision made after this remand, that Social Security appeal shall be assigned to the undersigned (as the District Judge who issued the ruling that remanded the case).

The Clerk shall enter judgment accordingly and close this case.

It is so ordered.

Dated this 5th day of August 2022, at Hartford, Connecticut.

/s/AWT
Alvin W. Thompson
United States District Judge